UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TUNC URAZ,

        Plaintiff,                      Case No. 1:19-cv-223

v.                                         Honorable Paul L. Maloney

MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES et al.,

        Defendants.
_____/

## OPINION

This is an action brought by a state prisoner under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2614(a). Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the complaint. Plaintiff fails to state a federal claim upon which relief can be granted against a defendant who is not immune from suit.

## Discussion

**I.    Factual allegations**

Plaintiff Tunc Uraz is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Michigan.

According to his MDOC records, a jury found him guilty of one count of aggravated stalking and three counts of solicitation of murder.[1] The events about which he complains occurred a few months before he committed these crimes.

Plaintiff sues the Michigan State University Board of Trustees as well as the following employees of Michigan State University (MSU): Vennie Gore, the Director of Housing and Food Service; Guy Procopio, the Director of the Culinary Department; Jennifer Roberts and Dan Singer, who work in the human resources (HR) section of the Culinary Department; and Jim Nash, the Employee Relations Director for MSU's human resources division.

Plaintiff alleges that he was employed by MSU in its Culinary Department for 25 years. On January 28, 2016, he notified his managers and Defendants Roberts and Singer that he was experiencing a "serious health condition" that would require intermittent leave under the FMLA. (Compl., ECF No. 1, PageID.3.) He also told his managers that he was experiencing "legal troubles" due to a "breakdown in his personal life." (*Id.*) His former girlfriend had sought and received a personal protection order (PPO) against him.

Plaintiff received "provisional" approval for intermittent leave from January 28, 2016, forward for absences related to his serious health condition, and he was told to submit the proper forms to certify his eligibility for leave under the FMLA. (*See* 1/28/2016 Letter from Sheila Chorey to Pl., ECF No. 1-1, PageID.11.) Plaintiff submitted the necessary forms and received approval for intermittent leave for a six month period, from January 28, 2016, to July 27, 2016. (2/17/2016 Letter from Sheila Chorey to Pl., ECF No. 1-1, PageID.18.)

On April 7, 2016, the MSU police began an investigation into an allegation that Plaintiff had asked a co-worker to assist him in illegally obtaining a firearm. Plaintiff was

---

[1] *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=114653 (visited June 4, 2019).

suspended from work pending completion of the investigation. According to a police report attached to Plaintiff's complaint, Plaintiff told a co-worker he was interested in obtaining a gun and ammunition without going about it "the legal way." (MSU Police Dep't Case Report, ECF No. 1-1, PageID.23.) Plaintiff apparently believed that the PPO prohibited him from purchasing a firearm or obtaining a license to carry one, so he asked his co-worker for assistance. Plaintiff's conduct potentially violated MSU's employment policy, which forbids soliciting the assistance of a university employee to commit a crime. However, it was not clear to the investigating officer that the PPO actually prohibited Plaintiff from purchasing or possessing a firearm. The MSU police closed the investigation and Plaintiff was not prosecuted.

On April 14, Plaintiff notified the HR department that his health condition had worsened, and he was given "provisional" approval for absences on or after that date that were related to his condition. (4/14/2016 Letter from Sheila Chorey to Pl., ECF No. 1-1, PageID.26.) That same day, he submitted the necessary paperwork to confirm his eligibility for immediate leave.

The following day, Defendants Gore, Procopio, Roberts, and Nash fired Plaintiff. In this action, Plaintiff contends that this termination violated his rights under the FMLA because he was approved for leave. He also contends that Defendants violated his rights under a collective bargaining agreement (CBA) with MSU because he did not receive written notice of his termination, a pre-termination meeting, or an opportunity to explain his "situation and [e]rratic behavior." (Compl., PageID.6.)

A representative for the Administrative Professional Supervisors Association (APSA) filed a grievance on Plaintiff's behalf and an arbitration was scheduled for October 2016. MSU initially offered a $30,000 settlement, but reduced its offer to $12,000 in September 2016.

The APSA accepted the second offer, with Plaintiff's approval. (*See* 9/14/2016 Letter from Jayne Flanigan to Pl., ECF No. 1-1, PageID.34 (signed by Plaintiff).) By that time, Plaintiff had been arrested and charged with a crime and was in detention at the Ingham County Jail. He contends that the settlement was "compensation for his accumulated sick time," and that he accepted it under "great duress" because he was being held in solitary confinement. (Compl., PageID.6.)

As relief, Plaintiff seeks a finding that Defendants "willfully" violated his rights under the FMLA and the CBA. (*Id.*, PageID.7.) He also seeks damages of $500,000.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### III. FMLA

Plaintiff contends that Defendants interfered with the exercise of his FMLA rights by terminating him while he was approved for intermittent leave under the FMLA, the day after he requested immediate leave for his condition. The FMLA creates a private right of action entitling "eligible employees" to seek both equitable relief and money damages "against any employer (including a public agency) in any Federal or State court of competent jurisdiction," 29 U.S.C. § 2617(a)(2), should that employer "interfere with, restrain, or deny the exercise of" FMLA rights, 29 U.S.C. § 2615(a)(1). The self-care provision of the FMLA—the provision applicable to Plaintiff—allows an employee "a total of 12 workweeks of leave during any 12-month period" for, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A violation of this provision can be enforced through § 2617(a)(1).

Plaintiff does not state a viable claim under the FMLA against the Board of Trustees of MSU because it is immune from suit in federal court under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune from suit in federal court under the Eleventh Amendment, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Courts have repeatedly held that MSU and its Board of Trustees are arms of the state, entitled to immunity under the Eleventh Amendment. *See, e.g.*, *Hill v. Bd. of Trs. of Mich. State Univ.*, 182

5

F. Supp. 2d 621, 625 (W.D. Mich. 2001) (citing *Williams v. Mich. State Univ.*, No. 1:93-cv-72, 1994 WL 617272, at *4 (W.D. Mich. Jan. 3, 1994)); *Weisbord v. Mich. State Univ.*, 495 F. Supp. 1347, 1355 (W.D. Mich. 1980)). Indeed, the MSU Board of Trustees is a creation of the Michigan Constitution, and its members are appointed by the governor or elected into office. *See* Mich. Const. art. 8, § 5. In addition, any judgment against the MSU Board of Trustees will be paid out of the state's tax revenues. Mich. Comp. Laws § 600.6095.

Michigan has not expressly waived its immunity under the Eleventh Amendment, *see Rounds v. Michigan*, No. 2:11-cv-12810, 2012 WL 2680825, at *4 (E.D. Mich. July 6, 2012), and Congress did not validly abrogate state sovereign immunity when enacting the self-care provision of the FMLA, *see Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 37 (2012). Thus, the MSU Board of Trustees is immune from suit in this Court for Plaintiff's claim under the FMLA.

Plaintiff's FMLA claim against the individual MSU employees fails because "public employers cannot be held individually liable under the FMLA." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 961 (6th Cir. 2013) (citing *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003) (concluding that "the FMLA's text and structure reveals that the statute does not impose individual liability on public agency employers")). Moreover, Plaintiff does not have the right to sue state officials for monetary damages for violations of the self-care provision of the FMLA. *Id.* at 962. Here, the only relief that Plaintiff seeks is damages. He does not seek prospective, equitable relief to remedy a "continuing violation of federal law." *Id.* at 964. Thus, he does not qualify for the exception to sovereign immunity in *Ex parte Young*, 209 U.S. 123 (1908), for suits against individual government officials in their official capacity. Accordingly, Plaintiff fails to state a claim under the FMLA against Defendants Gore, Procopio, Roberts, Singer, and Nash.

## IV. LMRA

Plaintiff alleges that Defendants violated his rights under a collective bargaining agreement, which arguably raises a claim under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Section 301 of the LMRA provides federal courts with jurisdiction over suits for violations of contracts between "an employer" and a labor organization. 29 U.S.C. § 185(a). However, states and political subdivisions thereof are specifically exempt from the definition of "employer." *See* 29 U.S.C. § 152(2) ("The term 'employer' . . . shall not include . . any State or political subdivision thereof[.]"); *Richards v. Ohio Civil Serv. Employees Ass'n*, 205 F. App'x 347, 355 (6th Cir. 2006) ("[T]he LMRA expressly excludes public employers—and by association, public employees—from its coverage."). As an arm of the state, MSU is not an "employer" within the meaning of the LMRA. *See Gant v. Peterson*, No. 12-cv-14721, 2013 WL 5770639, at *2 (W.D. Mich. Oct. 24, 2013) (concluding that the University of Michigan is a political subdivision of the state and, as such, is excluded from the definition of "employer" in the LMRA). Thus, Plaintiff does not state a claim under the LMRA against any of the defendants.

## V. State Law

To the extent Plaintiff seeks relief under state law for breach of contract, the Court declines to exercise jurisdiction over such a claim. Where, as here, a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL

476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state law claims, if any, are dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A because Plaintiff fails to state a federal claim under which relief may be granted and/or Defendants are immune from suit in federal court. In addition, the Court declines to exercise jurisdiction over Plaintiff's claims arising under state law, to the extent he raises any.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   June 12, 2019                             /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge